## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

DAWN ELLIOTT,     )
           )
    Plaintiff,   )
v.          )   Case No. CIV-21-208-RAW-SPS
           )
KILOLO KIJAKAZI,    )
Acting Commissioner of the Social )
Security Administration,   )
           )
    Defendant.  )

## REPORT AND RECOMMENDATION

The claimant Dawn Elliott requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 100, 303). She completed high school and has previously worked as a caregiver (Tr. 62-63, 338). The claimant alleges that she has been unable to work since an amended alleged onset date of October 1, 2017, due to posttraumatic stress disorder ("PTSD"); depression; anxiety; possible need for right hip replacement; scoliosis; left knee, left ankle, neck, left shoulder, and low back pain; and carpal tunnel (Tr. 337).

### Procedural History

On December 21, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ James Stewart conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 3, 2021 (Tr. 24-39). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could only frequently handle

-3-

and finger bilaterally; only occasionally climb ramps/stairs, balance, stoop, crouch, crawl, and kneel; and she could never climb ladders/ropes/scaffolds. Additionally, he found she was capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that required only that she be able to understand, remember, and carry out simple instructions, and that she could maintain concentration and persist for two-hour periods during the workday with normally-scheduled work breaks between periods, but that she should not work at jobs where changes in routine were regularly made under circumstances where there is little or no opportunity to adjust. Finally, he found she could relate to co-workers and supervisors on a superficial and work-related basis with occasional contact, and adapt to a work situation, but that she could have no contact with the general public and that she would, on an average of two to three times per year, either be late for work, have to leave work early, or miss work entirely due to her mental health symptoms (Tr. 29). The ALJ thus concluded that although the claimant could not return to her past relevant work as a caregiver, she was nevertheless not disabled because there was other work she could perform, *e. g.*, merchandise marker, housekeeping cleaner, and inspector packer (Tr. 37-39).

## Review

The claimant's sole contention of error is that the ALJ improperly relied on statements by the claimant at step three to find she had moderate mental limitations, then found her statements inconsistent with the medical evidence at step four. The undersigned Magistrate Judge finds this contention unpersuasive, and the ALJ's decision should be affirmed.

At step two, the ALJ found that the claimant had the severe impairments of osteoarthritis and allied disorders, dysfunction major joint, obesity, depression, bipolar and related disorders, trauma- and stressor-related disorders, and anxiety disorder, as well as the nonsevere impairments of diabetes mellitus, ankle impairment, and medication side effects (Tr. 27).   The medical evidence related to the claimant's mental impairments reflects that she received medication management and counseling treatment for her mental impairments, which included diagnoses of major depressive disorder, anxiety disorder, and PTSD (Tr. 428-429, 437, 610).   The claimant lived in California through the spring of 2018, but then moved to Oklahoma, which she attributed to trauma from dogs next door to her in California (Tr. 437).   Treatment notes reflect she was inconsistent with her medications, which would cause exacerbation of symptoms (Tr. 420-597).   When the claimant arrived in Oklahoma, she established care for continued medication management and counseling (Tr. 626, 803-863).   In October 2018 and in August 2020, the claimant reported exacerbation of her generalized anxiety disorder, noting she had been out of medications (Tr. 686, 869-872).   In March 2020, the claimant was reportedly stable on her medications, but still appeared unkempt/disheveled, although treatment notes reflect that was not always the case (Tr. 813, 817-845, 909-979).

On March 27, 2019, Dr. Kenny Paris, Ph.D., conducted a mental status/diagnostic examination of the claimant (Tr. 724-729).   She described her mood as anxious and somewhat depressed, and appeared that way to Dr. Paris, but she had appropriate facial expression, eye contact, cooperation, and alertness (Tr. 727).   She was estimated to have average intellectual functioning, although Dr. Paris noted the claimant was below average

in concentration (with digits forward/digits backward), and low average in arithmetic and recall after a few minutes (Tr. 728). His diagnostic impression of the claimant was PTSD and mood disorder NOS (Tr. 728). Dr. Paris noted that her memory skills appeared to be somewhat impaired, but she had no significant problems with persistence and pace, and he further stated that the claimant's ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors and coworkers was estimated to be below average, while her judgment was adequate (Tr. 728-729).

On September 23, 2020, the claimant presented to the Crisis Care Center endorsing suicidal ideation, but she checked herself out the next day. Notes reflect the claimant was not taking her medications due to fees/costs, which triggered her suicidal ideation (Tr. 894-899). She was allowed to discharge herself as she did not meet the criteria for an involuntary patient admission (Tr. 902).

State reviewing physician Stephanie Crall, Ph.D., determined initially that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 139-140). Additionally, she found the claimant had moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervision, get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting (Tr. 140-141). She concluded that the claimant could understand, remember, and carry out simple instructions, relate to coworkers and supervisors on a superficial work basis, and adapt to basic work demands and/or some changes in the work setting, but that she could not interact

appropriately with the general public (Tr. 141). On reconsideration, Dr. Deanna Gallavan, Ph.D., found the claimant's limitations were moderate (with no marked limitations), and concluded that the claimant could understand, remember, and carry out simple instructions; relate to coworkers and supervisors on a superficial work basis; focus for two-hour periods with routine breaks, and pace and persist for an eight-hour workday and forty-hour workweek despite psychological symptoms; and adapt to basic work demands and/or some changes in the work setting; but that she could not interact appropriately with the general public (Tr. 187).

At the administrative hearing, the claimant testified that her mental impairments made daily activities at home overwhelming and that she had been hospitalized on September 12, 2020 as a result of depression (Tr. 114-115). She also testified that she generally does not associate with people because her nerves are "real edgy," and it increases her anxiety (Tr. 117). She stated that she usually only leaves home to take her daughter to work and that she does not shop by herself but makes her husband accompany her (Tr. 117-118). Additionally, the claimant completed a function report in which she indicated that sometimes she does housework such as cleaning, laundry, and vacuuming, while sometimes she stays in bed all day; that she does not regularly bathe and needs reminders; and that her sleep is disturbed by nightmares (Tr. 352-354). Additionally, she stated that she is unable to go out alone due to anxiety, and that she does not socialize often because she does not like to leave the house (Tr. 355-357). She indicated that she can pay attention for fifteen minutes, but that she does not handle stress or changes in routine well, and that she is scared and cries a lot (Tr. 357-358).

In his written decision at step three, the ALJ found that the claimant had moderate limitations in all four broad functional areas (understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself) (Tr. 28-29). In support of his findings in each of the four categories, the ALJ only cited to the functional report the claimant herself completed (Tr. 28-29, 352-359). At step four, the ALJ summarized the claimant's hearing testimony and her functional report, as well as the medical evidence in the record (Tr. 30-37). As relevant to this appeal, the ALJ stated at step four that the claimant's statements as to her symptoms were inconsistent with the totality of the evidence and her treatment history, then proceeded to detail nearly every medical record during the relevant time frame (Tr. 31-37). He further noted that no treating medical source had offered an opinion as to the claimant's symptoms and their impact on her ability to work, "leaving the claimant's allegations uncorroborated." (Tr. 37). He found the state reviewing physician opinions as to the claimant's mental impairments "most persuasive," but stated that he further limited the claimant based on her moderate limitations in her ability to complete a normal workday due to her mental symptoms (Tr. 36-37). The only assessment of Dr. Paris's report that he provided was to state that it was not a valid medical opinion to opine that the claimant would have a below average ability to perform adequately in most job situations (Tr. 37).

The claimant contends that it was error for the ALJ to rely on her statements at step three to find she had moderate limitations in the four broad functional areas, but to then label her statements as inconsistent with the medical record at step four. She asserts that the ALJ either intended to find all her statements inconsistent with the medical record,

-8-

which calls his step three findings into question as to the four broad functional areas since he relied solely on her functional report to make those findings, or he found all her statements not credible except those which he cited at step three.  If the latter, she contends this is problematic because the ALJ recited statements at step three that were not incorporated into the RFC.  Specifically, the ALJ cited at step three the following statements of the claimant:  (i) that she can only pay attention for fifteen minutes, (ii) that she does not finish tasks she starts or do well with verbal instructions, (iii) that she does not handle stress, and (iv) that she does not do well with changes in routine.  She contends that if the latter applies, the ALJ "should" have found greater than moderate limitations at step three and that those limitations "should" have been incorporated into her RFC.  She acknowledges that the ALJ addressed her concentration limitations in the RFC but asserts that the ALJ did not go far enough because he only concluded that she could maintain concentration and persist for two-hour periods and she stated she can only pay attention for fifteen minutes.   The undersigned Magistrate Judge finds the claimant's limited interpretation of the ALJ's opinion unavailing.

The Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("[T]he ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limited him to unskilled work.").  And here, the ALJ did not simply limit her to unskilled work; instead, the ALJ's stated RFC as to her mental limitations found her capable of doing only unskilled

work consisting of simple and routine tasks with routine supervision that require only that she be able to understand, remember, and carry out simple instructions, and that she could maintain concentration and persist for two-hour periods during the workday with normally-scheduled work breaks between periods, but that she should not work at jobs where changes in routine regularly made under circumstances where there is little or no opportunity to adjust. Additionally, he found she could relate to co-workers and supervisors on a superficial and work-related basis with occasional contact, and adapt to a work situation, but that she could have no contact with the general public and that she would, on an average of two to three times per year, either be late for work, have to leave work early, or miss work entirely due to her mental health symptoms (Tr. 29). Thus, even if *Vigil* does not stand "for the broad proposition that unskilled or simple work adequately addresses all of the moderate mental limitations [from step three] at issue here and allows the ALJ to collapse these limitations into 'simple, routine, repetitive work, with 1, 2, or 3 step instructions, in an environment requiring few decisions[,]'" *see Garza v. Saul*, 2020 WL 55518837, at *13 (D. N.M. Sept. 14, 2020), here the ALJ did not rely on an RFC limiting the claimant to simple or unskilled work but assigned a stricter RFC to account for all of her moderate limitations. Additionally, it is noteworthy that the claimant is not challenging the ALJ's assessment of the medical opinions at step four, *and* that the ALJ provided further RFC limitations than the reviewing and consultative reports indicated *because* of the claimant's assertions. The fact that the ALJ credited or cited to some of the claimant's own reports at steps two and three in discussing the four broad functional limitations does not preclude a finding at step four that her statements were not *entirely* consistent with the

evidence in the record.  The undersigned Magistrate Judge thus finds here that the RFC limitations adequately accounted for the claimant's moderate limitations at step three and the ALJ was not required to adopt a more limited RFC.  *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016) ("Unskilled work does not require . . . the ability to maintain attention and concentration for extended periods, an area in which Dr. Tabor noted a moderate limitation.").

Turning to the ALJ's assessment of the claimant's subjective statements at step four, the undersigned Magistrate Judge recognizes that the Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.  Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2]  Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test.  *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[3]  As part

---

[2]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996).  *See* SSR 16-3p, 2017 WL 5180304, at *1.  SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.*  at *2.

[3]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence.  *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  The undersigned Magistrate Judge agrees that Tenth

of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The claimant's argument as to the consistency of her statements is the same as her argument as to the ALJ's findings as to the four broad functional areas, *i. e.*, that the ALJ's findings were inconsistent from step three to step four and that these differences amount to reversible error. But as outlined above, the undersigned Magistrate Judge finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding

---

Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

that the claimant's subjective complaints were not believable to the extent alleged at step four, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record, further limiting her RFC from that recommended by the state reviewing physicians based on her moderate limitations related to her mental impairments.  In particular, the ALJ cited inconsistencies between the claimant's subjective statements and the evidence of record, noting that her purported allegations were uncorroborated by treating physicians and inconsistent with the evidence to the extent she asserts they established a disability.  The ALJ's step three findings are not an RFC assessment, nor an evaluation of the consistency of statements made by a claimant, and there is no indication here that the ALJ misread the claimant's medical evidence taken as a whole at step four. His evaluation is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination, and ultimately found that the claimant was not disabled.  *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the

relevant medical evidence, it is well within the province of the ALJ.") (citations omitted). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence.   Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be AFFIRMED.   Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**